UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff/Respondent,    )
                                   )          No. 5:14-CR-83-DCR-REW
v.                                 )          No. 5:16-CV-161-DCR-REW
                                   )
ADRIAN WESLEY CAMPBELL,            )
                                   )          RECOMMENDED DISPOSITION
          Defendant/Movant.        )
                                   )

\*\*\* \*\*\* \*\*\* \*\*\*

Movant, Adrian Campbell, is a federal inmate. DE #131 (Motion), at 1. On May

18, 2016,[1] Campbell filed a *pro se*[2] motion under 28 U.S.C. § 2255, as well as a

memorandum of law. *See id.*; DE #131-1. The United States responded in opposition. DE

#139 (Response). Campbell replied. DE #145 (Reply). The District Court found that

Campbell waived attorney-client privilege as to the § 2255 issues, DE #136 (Order), and

later denied two efforts to add or supplement claims unrelated to the current merits. DE

##148, 150 (Orders).[3] The matter is ripe for consideration. Per normal practice, the

District assigned the matter to the undersigned for a recommended disposition. For the

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (*per curiam*). Here, Campbell affirmed under penalty of perjury that he executed the motion and placed it in the prison mailing system on May 18, 2016. DE #131, at 12.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)).

[3] A third such motion currently pends. DE #151 (Motion). The Court **DENIES** DE #151. The Court is well aware of and will properly account for *Mathis v. United States*, 136 S. Ct. 2243 (2016), in this recommendation, and the Court finds no reason to permit supplementation to state a separate *Mathis*-based claim.

following reasons, the Court **RECOMMENDS** that the District Judge **GRANT** DE #131 to the extent Hon. Edward M. Thompson, Campbell's trial-level counsel, ineffectively assisted Movant regarding sentencing, otherwise **DENY** DE #131, appoint Campbell counsel, schedule resentencing, and issue no Certificate of Appealability on the unsuccessful claims.

## I.     BACKGROUND INFORMATION

On August 7, 2014, a grand jury charged Campbell, among others, with one count of conspiring to distribute 50 kilograms or more of marijuana and three counts of using a communication facility in committing a felony. DE #1 (Indictment). Campbell pleaded guilty to Count 1, pursuant to a plea agreement, on February 4, 2015. DE ##64 (Rearraignment Minute Entry); 87 (Plea Agreement); 88 (Sealed Supplement). Judge Reeves sentenced Campbell on May 20, 2015. DE #86 (Sentencing Minute Entry). Movant received a total prison sentence of 190 months, followed by 6 years of supervised release. DE #89 (Judgment). Campbell appealed, and the Sixth Circuit dismissed the case on February 4, 2016, based on an appellate-review waiver in the Plea Agreement. DE #121 (Sixth Circuit Order). On May 18, 2016, Campbell filed the § 2255 motion, purportedly in part (though not in reality) premised on *Johnson v. United States*, 135 S. Ct. 2551 (2015). DE #131. The United States responded. DE #139. Campbell replied. DE #145. The motion stands ripe for review.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28

U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A defendant alleging a constitutional basis must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). When alleging a non-constitutional error, a defendant must prove that the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

## III.    ANALYSIS

In the instant motion, Campbell presents three interconnected grounds for relief, centered on *Johnson* and the career offender predicate status of his 2007 Kentucky assault third conviction: that (1) his appellate-review waiver is unenforceable insofar as *Johnson* "is beyond the scope of the appellate waiver"; (2) his appellate counsel was

ineffective for failing "to argue *Johnson* . . . in [the] reply brief as requested"; and (3) his sentencing counsel was ineffective for failing to make a meaningful argument against applying the career offender Guideline enhancement. DE #131-1, at 2. The core of Campbell's motion, however, is attempted relitigation of whether his Kentucky assault third conviction properly qualified as a career offender Guideline predicate.

The Court perceives the motion to not actually raise a *Johnson* issue at all. The motion is timely under § 2255(f)(1) and simply seeks to challenge Judge Reeves's prior finding (not under the invalidated residual clause, contained in U.S.S.G. § 4B1.2(a)(2)) that Campbell's Kentucky assault third conviction properly counted as a career offender predicate. Judge Reeves, at sentencing, did not in any way utilize the Guidelines' residual clause in the analysis, instead staking the predicate finding on § 4B1.2(a)(1). *See* DE #114 (Sentencing Transcript), at 6-11.[4] Accordingly, *Johnson* has no impact on the case. However, because Campbell raises *Johnson*, the Court will nevertheless set out some necessary general background.

*Johnson* held unconstitutional the residual clause of the Armed Career Criminal Act (ACCA) (18 U.S.C. § 924(e)(1) and its definitions). 135 S. Ct. at 2563. "*Johnson* is retroactive in cases on collateral review[.]" *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Here, the Court obviously did not sentence Campbell under the ACCA, which

---

[4] The District Court did nominally adopt the PIR and its findings in full. DE #86 (Minutes). One such finding was that "KRS 508.025 also meets the requirements of subsection [U.S.S.G. § 4B1.2](a)(2), as the statute 'involves conduct that presents a serious potential risk of physical injury to another.'" DE #93, at 24. However, Judge Reeves clarified on the record at sentencing that he did not, in any way, stake the qualification finding on the Guidelines' residual clause; he never mentioned the residual clause in his analysis. Based on Judge Reeves's narrowed and specific finding at sentencing, the Court perceives the residual clause as not actually serving as an alternative sentencing basis.

applies only to § 922(g) violators (much less utilizing its residual clause). Instead, Campbell violated 21 U.S.C. §§ 846. *See* DE #89 (Judgment).

However, Campbell was indeed deemed a career offender under the United States Sentencing Guidelines, and "*Johnson*'s rationale applies with equal force to the Guidelines' residual clause." *United States v. Pawlak*, 822 F.3d 902, 907 (6th Cir. 2016). The Court sentenced Campbell as a career offender under U.S.S.G. § 4B1.1. *See* DE #93 (PIR), at ¶ 24 ("[T]he defendant is a career offender."); *id.* at ¶ 38 ("The defendant is a career offender[.]"); DE #114 (Sentencing Transcript), at 10 (Judge Reeves: "The court will find that the defendant does qualify as a career offender and that the guideline calculations correctly designate him as such."); DE #86 (Sentencing Minutes reflecting adoption of PIR Guideline calculus and overruling defense objection). The definitions associated with the career offender enhancement are at U.S.S.G. § 4B1.2. *Johnson*, which invalidated only the ACCA residual clause (and, by logical extension, § 4B1.2(a)(2)'s residual clause), clearly did not address or impact the "crime of violence" elements or enumerated offenses clauses, nor did it impact the definition of a controlled substance offense. *See, e.g.*, 135 S. Ct. at 2563; *United States v. Thompson*, 619 F. App'x 514, 515 (6th Cir. 2015); *Trice v. United States*, No. 3:13-CR-96-CRS, 2016 WL 867545, at *7 (W.D. Ky. Jan. 7, 2016); *United States v. Smith*, Nos. 10-CR-20058, 12-CV-11913, 2015 WL 5729114, at *13 (E.D. Mich. Sept. 30, 2015).[5]

To qualify as a career offender, the defendant must have been at least 18 years old at the time of offense commission (Campbell was), the offense of conviction must have

---

[5] The general question of *Johnson*'s retroactive application to career offender cases remains open. *See Beckles v. United States*, 136 S. Ct. 2510 (2016) (granting *certiorari* to address this issue). The United States raises the issue, DE #139, at 6-7, but *Johnson*'s application vel non in Guideline cases is not determinative here.

been (as relevant here) a felony controlled substance offense (this § 846 conspiracy to distribute 50 kilograms or more of marijuana was, *see* U.S.S.G. § 4B1.2(b), application note 1), and the defendant must have had "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The last criterion is the one at issue here.

No party contests that Campbell has at least one properly qualifying predicate offense. *See* PIR at ¶ 32 (federal PWID cocaine conviction). The relevant substantive question is whether the ¶ 31 (DE #114) Kentucky assault third conviction also properly counts as a career offender predicate. The question, in the context of Campbell's particular presentation, implicates numerous issues, which the Court explores, in turn, below.

      1.    *Appeal and Collateral Attack Waiver*

As an initial matter, to the extent Campbell raises or suggests it as a separate issue (in nominal Ground 1), his collateral attack waiver, *see* DE #87 (Plea Agreement), at ¶ 8, applies to bar an independent *Johnson* claim and an independent challenge to career offender status via a § 2255 motion. *In re Garner*, ___ F. App'x ___, No. 16-1655, 2016 WL 6471761 (6th Cir. Nov. 2, 2016).[6] Even "where developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature." *Id.* at *1. Campbell's "willingness to waive his right to appeal and to attack his sentence collaterally binds him no less now than it did when he signed the agreement." *Id.* at *2

---

[6] Campbell perhaps raises (or intended to raise) the independent, direct, substantive claim that he was improperly classified as a career offender; the heading of Ground 1 is "Career Offender Enhancement No-Longer Applicable." DE #131, at 4. His waiver forestalls such a claim.

(internal alteration and quotation marks omitted). *In re Garner* addressed the effect of *Johnson* on waiver, the very claim Campbell offers.

The Sixth Circuit has already concluded that Campbell's ¶ 8 waiver "is valid and enforceable." DE #121, at 3. Judge Reeves, the rearraignment and sentencing judge, concluded the same. DE #64 (Rearraignment Minutes) ("The Court finds that the waiver provision of the written Plea Agreement is knowingly and intelligently made and that the defendant understands the consequence of the waiver."). The Court of Appeals explicitly noted that "Campbell's plea agreement contemplated the career offender enhancement." DE #121, at 3.

Because Campbell knowingly, intelligently, and voluntarily entered the appeal and collateral attack waiver, and because, per *Garner*, the addition of *Johnson* does not affect the validity of such a waiver, Campbell's Ground 1 argument (that the "[a]ppeal waiver [is] unenforceable where [*Johnson*] is beyond the scope of the appellate waiver") is ill-founded. Further, to the extent Movant endeavors to raise as an independent claim that he was improperly classified as a career offender, the "valid and enforceable" waiver bars it. *In re Garner*, 2016 WL 6471761, at *1-*2; *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999). However, because Campbell mounts two (nominal) ineffective assistance of counsel challenges, which the waiver does not bar, *see* DE #87, at ¶ 8, the Court will proceed to evaluation of those claims.

2.    *Ineffective Assistance of Counsel (IAC)*

a.    **Standards**

"[T]he right to counsel guaranteed by the Constitution is a right to the effective assistance of counsel." *Lockhart v. Fretwell*, 113 S. Ct. 838, 847 (1993) (internal

quotation marks removed). When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069. In the context of a guilty plea, a movant must show that a "reasonable probability exists that, but for counsel's errors, defendant would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 106 S. Ct. 366, 370 (1985).

As to ineffective assistance at sentencing, "any amount of actual jail time has Sixth Amendment significance." *Glover v. United States*, 121 S. Ct. 696, 700 (2001). "An error by counsel at sentencing that amounts to any extra jail time is prejudicial under the Sixth Amendment." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012). "[T]he familiar framework established in" *Strickland* generally governs sentencing IAC claims—a movant must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Howard v. United States*, 743 F.3d 459, 463-64 (6th Cir. 2014). "A reasonable probability is less than a preponderance of the evidence, as a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.*; *see also, e.g.*, *United States v. Jones*, 308 F. App'x 930, 932 (6th Cir. 2009) (requiring a showing of a reasonable probability "that the district court would have sentenced [Movant] differently had counsel sought a departure" or that Movant "would have received a different sentence"); *United States v. DeGroat*, 102 F. App'x 956, 959-60 (6th Cir. 2004) (same); *Arredondo v. United States*, 178 F.3d 778, 783-84 (6th Cir. 1999) (including an extended discussion of the *Strickland* standard applied to sentencing).

The following standard informs Campbell's ineffective assistance of appellate counsel (IAAC) claim: "Under the *Strickland* standard—as modified for IAAC claims—a petitioner is entitled to habeas relief if he can show two things: (1) appellate counsel was objectively unreasonable in failing to find non-frivolous, arguable issues to appeal; and (2) a reasonable probability that, but for counsel's error, his appeal would have prevailed." *Sanders v. White*, No. 03-455-ART, 2015 WL 711262, at *68 (E.D. Ky. Feb.

18, 2015) (citing *Smith v. Robbins*, 120 S. Ct. 746, 764-65 (2000)); *see also Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (applying *Strickland* standard to a § 2255 IAAC claim); *Sullivan v. United States*, 586 F. App'x 935, 948 (6th Cir. 2014) (same); *Williams v. United States*, No. 2:13-CV-1124, 2015 WL 3867257, at *4 (S.D. Ohio June 23, 2015) (applying modified standard to a § 2255 motion).

### b.      Mr. Clark's Representation

First, Campbell critiques his appellate lawyer's (Hon. John F. Clark's) briefing, in particular, Mr. Clark's failure to make a *Johnson*-based argument in an unspecified reply brief.[7] As the Court has stated, the sentence imposed did not hinge on the residual clause, so *Johnson* does not impact the case or the briefing in any way. Further, even a valid *Johnson* claim would fall via the waiver, per *In re Garner*. As such, the Court categorically rejects Campbell's criticism of his appellate lawyer—that lawyer did not ineffectively assist Campbell. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

---

[7] Campbell is unclear, but the briefing he appears to criticize concerned the distinct issue of whether the Sixth Circuit should dismiss the appeal based on the plea agreement's appellate waiver—*not* the substantive issues that Campbell perhaps wanted to raise. *See* DE #27, Sixth Circuit case no. 15-5570; *see also* DE #145-1, at 4 (1/20/16 Letter from Clark to Campbell saying: "I did not raise *Johnson* as an argument specifically relating to the appeal waiver issue itself . . . , as the rule of *Johnson* does not apply to the particular issue of whether your appeal should be dismissed, based on the specific appeal waiver issues in your case."). This was in no way ineffective. Mr. Clark acted within the bounds of competent representation by arguing at length against the career offender enhancement's application to Campbell in Defendant's main appeal brief, but excluding reference to the substantive question in the response to the Government's motion to dismiss based on the appeal waiver. *Coleman v. Mitchell*, 268 F.3d 417, 431 (6th Cir. 2001); *Smith v. Robbins*, 120 S. Ct. 746, 765 (2000). That response concerned a distinct legal question separate from the career offender qualification merits, and Clark—utilizing his professional judgment and advocacy skills—zealously advocated against dismissal. The Sixth Circuit disagreed, but that does not make Clark ineffective.

### c.      Mr. Thompson's Representation

The claim with traction is that Mr. Thompson, Campbell's trial lawyer, acted ineffectively regarding sentencing, relative to his handling of the career offender enhancement. As to this claim, Campbell contends that Mr. Thompson should have contested the career offender predicate status of the 2007 assault third conviction by (a) challenging the trial court's treatment of the statute as categorically involving a crime of violence and (b) opposing application of the modified categorical approach. *See* DE ##131-1, at 9-10; 145 (Reply), at 7-8 (stating that the "gist of Petitioner's argument" is that Thompson failed to argue that "the 'assault third' conviction was not a crime of violence for the career offender guideline enhancement" and otherwise make "an adequate or meaningful challenge to the career offender guideline enhancement"). The Court turns to these issues, which present several layers of analysis. Further, the difference between making a direct, substantive claim and one couched in IAC review is an important one—a distinction that enables Campbell to avoid the agreed waiver, but also one that meaningfully alters the requirements to prove a meritorious ground for relief.[8]

Campbell's asserted IAC sentencing ground centers on whether the Kentucky assault third conviction properly qualifies as a career offender predicate. In Kentucky, as applicable to Campbell, "[a] person is guilty of assault in the third degree when [he] [r]ecklessly, with a deadly weapon or dangerous instrument, or intentionally causes or

---

[8] The United States raises procedural default as a reason to reject any possible Campbell direct career offender claim. DE #139, at 5-6. Because the Court has determined that the collateral attack waiver bars any such claim, the Court does not evaluate the separate procedural default suggestion. Procedural default is no impediment to the IAC theories. *Massaro v. United States*, 123 S. Ct. 1690, 1696 (2003) ("We do hold that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255.").

attempts to cause physical injury to [a] state, county, city, or federal peace officer[.]" KRS 508.025(1)(a)(1). The statute has not been amended since Campbell committed the crime. *See* KRS 508.025 legislative history, indicating a last amended date of 6/20/2005 (and the offense occurred in September 2005). Assault third is a class D felony, KRS 508.025(2), punishable by not less than 1 nor more than 5 years in prison. KRS 532.060(2)(d).

Campbell's assault third conviction properly qualifies as a "crime of violence" for purposes of § 4B1.1(a) if it is "punishable by imprisonment for a term exceeding one year" (it is) and if it "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" U.S.S.G. § 4B1.2(a)(1). The second criterion is the one Campbell challenges. Judge Reeves expressly found that Kentucky assault third qualifies. DE #114, at 6-11.

### i.      First, the Court applies the categorical approach.

To address the substantive qualification issue in light of Campbell's IAC claim, the Court first employs the categorical approach, "which means that it focuses on the statutory definition of the offense, rather than the manner in which an offender may have violated the statute in a particular circumstance." *United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013). "Even when there is little doubt that the circumstances of a defendant's violation were violent, the question is whether the statute he violated, as a categorical matter, is a crime of violence." *Id.* (internal quotation marks and alteration omitted). "If a state criminal statute could be violated in a way that would constitute a crime of violence and in a way that would not," it is not categorically a crime of violence. *United States v. Rede-Mendez*, 680 F.3d 552, 556 (6th Cir. 2012).

On its face, KRS 508.025 logically seems to categorically have as an element the use, attempted use, or threatened use of physical force against the person of another. It requires the actor to recklessly, with a deadly weapon or dangerous instrument, or intentionally cause or attempt to cause physical injury to a specified person. "Physical injury," under Kentucky law, means "substantial physical pain or any impairment of physical condition." KRS 500.080(13). This squares with the Supreme Court's conceptualization of requisite § 4B1.2 physical force. *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010) ("[T]he phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." (emphasis in original)) (distinguishing violent force from a mere touching). Kentucky, per its definition of "physical injury," requires proof of "substantial physical pain" or any "impairment of physical condition," both concepts that parallel "force capable of causing physical pain or injury." *United States v. Evans*, 699 F.3d 858, 863-64 (6th Cir. 2012).

Indeed, at least three federal courts in Kentucky, including Judge Reeves, have previously concluded that a KRS 508.025 conviction properly and categorically counts as a Guideline crime of violence under § 4B1.2(a)(1). *United States v. Mullins*, Nos. 2:11-69-DCR, 2:16-119-DCR, 2016 WL 3849816, at *2 (E.D. Ky. July 11, 2016) (Reeves, J.); *United States v. Laporte*, No. 5:11-CR-25-TBR, 2016 WL 797596, at *2 (W.D. Ky. Feb. 29, 2016) (Russell, J.); *United States v. Guevara-Barcenas*, No. 5:12-36-KKC, 2014 WL 5685571, at *7 (E.D. Ky. Nov. 4, 2014) (Caldwell, C.J., adopting the recommendation of Atkins, M.J.).

Judge Russell explained:

The Court finds that even if Laporte's argument that *Johnson* applies to the sentencing guidelines is correct, it does not affect Laporte's sentencing

because Laporte's prior conviction for assault in the third degree still qualifies as a 'crime of violence' under the first definition found in U.S.S.G. § 4B1.2(a). This definition defines a 'crime of violence' as one which has 'as an element the use, attempted use, or threatened use of physical force against the person of another.' Laporte's conviction of assault in the third degree under KRS 508.025 meets this definition, as it requires a person act 'recklessly, with a deadly weapon or dangerous instrument, or intentionally causes or attempts to cause physical injury.' *See, e.g.*, *United States v. Guevara-Barcenas*, 2014 WL 5685571, at *7 (E.D. Ky. Nov. 4, 2014) (holding prior conviction for assault in the third degree under KRS 508.025 'involved the use, and attempted use of physical force' and was properly classified as a 'crime of violence'). Accordingly, since Laporte's prior conviction for assault in the third degree meets the first definition for 'crime of violence,' the potential application of *Johnson* to U.S.S.G. § 4B1.2(a) is irrelevant.

*Laporte*, 2016 WL 797596, at *2. Judge Reeves agreed, post-*Johnson*, holding that Kentucky assault third "qualifie[s] under the 'use of force' clause in U.S.S.G. § 4B1.2(a)(1)." *Mullins*, 2016 WL 3849816, at *2 (citing *Laporte* and *Guevara-Barcenas*). "Because the prior assault conviction qualified as a crime of violence under the use of force clause rather than the residual clause," Judge Reeves explained, "*Johnson* does not apply to [the defendant]'s sentence." *Id.*

Campbell, though, seizes on KRS 508.025(1)(a)'s inclusion of recklessness[9] as a *mens rea* to argue that Kentucky assault third does not categorically count as a crime of violence. *See, e.g.*, DE #131-1, at 3 (arguing that counting a conviction "for reckless conduct" is "in contrast to federal laws"), 5 ("[N]ot all of the conduct proscribed by [KRS 508.025] qualifies as a crime of violence (reckless conduct)[.]"), 9 (arguing that reckless conduct "is not permissible to sustain the conviction under federal laws"); *see also* DE

---

[9] All references to recklessness in the context of KRS 508.025 should be understood to include the statute's modifying phrase, "with a deadly weapon or dangerous instrument." Campbell perhaps argues to the contrary, *see* DE #145, at 10; *but see id.* at 9, but Kentucky has treated "with a deadly weapon or dangerous instrument" as modifying the reckless *mens rea*. *See, e.g.*, *Higgins v. Commonwealth*, No. 2003-SC-639-MR, 2013 WL 3131602, at *3 (Ky. Nov. 23, 2005); *Rayford v. Commonwealth*, No. 2002-CA-1325-MR, 2003 WL 23095938, at *3 (Ky. Ct. App. Dec. 31, 2003).

#145 (Reply), at 8-9. *Laporte*, *Mullins*, and *Guevara-Barcenas* do not grapple with that aspect of Kentucky's assault third statute. Campbell's counsel did not contest the Court's categorical treatment of the statute here.

"A person acts recklessly with respect to a result" in Kentucky "when he fails to perceive a substantial and unjustifiable risk that the result will occur[.]" KRS 501.020(4). "The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." *Id.*

In the Sixth Circuit: "When a crime requires only the mens rea of recklessness, it cannot qualify under the 'use of physical force' subsection of the ACCA." *Jones v. United States*, 689 F.3d 621, 626 (6th Cir. 2012).[10] This is so, essentially, because "'use' requires active employment." *Leocal v. Ashcroft*, 125 S. Ct. 377, 382 (2004) (interpreting 18 U.S.C. § 16). It is not "natural to say that a person actively employs physical force against another person by accident." *Id.* "Thus," according to the Supreme Court "a person would use physical force against another when pushing him; however, we would not ordinarily say a person uses physical force against another by stumbling and falling into him." *Id.* (internal quotation marks and alterations omitted). *Leocal* did expressly leave open the question of whether an "offense that requires proof of the *reckless* use of force against a person or property of another qualifies as a crime of violence[.]" 125 S. Ct. at 384 (emphasis in original). The Sixth Circuit, following the lead of the Third and Fourth Circuits, extended *Leocal* to crimes requiring only recklessness. *United States v. Portela*, 469 F.3d 496, 499 (6th Cir. 2006).

---

[10] "Whether a conviction is a violent felony under the ACCA is analyzed in the same way as whether a conviction is a crime of violence under the United States Sentencing Guidelines[.]" *United States v. McMurray*, 653 F.3d 367, 371 n.1 (6th Cir. 2011).

The Supreme Court, however, recently held that "misdemeanor assault convictions for reckless . . . conduct" can involve the "use of physical force." *Voisine v. United States*, 136 S. Ct. 2272, 2276 (2016) (interpreting 18 U.S.C. § 921(a)(33)(A)).[11] The Court was clear: "A person who assaults another recklessly 'uses' force, no less than one who carries out that same action knowingly or intentionally." *Id.* at 2280 (internal alteration omitted). The Court explicitly noted, though, that it did "not resolve whether § 16 includes reckless behavior." *Id.* at 2280 n.4. Indeed, courts "have sometimes given those two statutory definitions divergent readings in light of differences in their contexts and purposes, and [the Supreme Court did] not foreclose that possibility with respect to their required mental states." *Id.* The Supreme Court specifically drew attention to the distinction between § 921(a)(33)(A) "force" (which includes "any offensive touching") and § 16 "force" (which only encompasses "violent force"[12]). *Id.* Still, though, the Supreme Court noted that "*Leocal*'s exclusion of accidental conduct from a definition hinging on the 'use' of force is in no way inconsistent with [the] inclusion of reckless conduct in a similarly worded provision." *Id.*

Despite the appeal that *Voisine* may have toward including recklessness as a qualifying *mens rea* here, the Court finds it significant that the Supreme Court explicitly

---

[11] *Voisine* did not exist as a source of law at the time of sentencing, but the Court includes it for purposes of presenting a complete and current analysis.

[12] *See Leocal*, 125 S. Ct. at 383 (Section 16's "crime of violence" definition "suggests a category of violent, active crimes[.]"); *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003) (cited as authoritative in *Johnson* (2010) as the Supreme Court drew parallels between § 16 and § 924(e)(2)(B)(i)). Additionally, "the definition of a 'crime of violence' under 18 U.S.C. § 16(a) is almost identical to the definition of a 'violent felony' under § 924(e)(2)(B)(i)." *United States v. Anderson*, 695 F.3d 390, 400 n.5 (6th Cir. 2012). "Thus, authority interpreting the former can be applied to interpret the latter." *Id.*; *see also, e.g.*, *Ortiz v. Lynch*, 796 F.3d 932, 935 (8th Cir. 2015) ("[T]he definition of 'crime of violence' in section 16 is 'virtually identical' to the definition of a 'crime of violence' in U.S. Sentencing Guidelines Manual § 4B1.2(a) and 'violent felony' in the Armed Career Criminal[] Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(i).").

left open the possibility that § 16 does *not* encompass reckless behavior, citing "divergent . . . contexts and purposes," including specifically noting the differences in the scope of "force." Section 4B1.2, like § 16, requires "violent force," in contrast to § 921(a)(33)(A), which *Voisine* interpreted. The Supreme Court explicitly noted this as one reason § 16, and by extension § 4B1.2, may not encompass recklessness. At bottom, the Supreme Court did not extend the *Voisine* holding, despite some arguable inferential suggestions to the contrary, to circumstances requiring "violent force," cabining the analysis to § 921(a)(33)(A).

The Court also finds significant *Voisine*'s conceptualization of recklessness, which it described as the "dominant formulation": "to consciously disregard a substantial risk that the conduct will cause harm to another." 136 S. Ct. at 2278. Kentucky's definition critically differs. Recklessness in Kentucky requires the actor only to "fail[] to perceive a substantial and unjustifiable risk"—*not* "to consciously disregard" such a risk. *See* KRS 501.020(4). Thus, Kentucky's recklessness standard involves a lower mental state than what the Supreme Court contemplated in deciding *Voisine*, indicating its inclusion of recklessness in "use" may be particularly inapposite here.

At least pre-*Voisine*, the Sixth Circuit's stance is plain: "Reckless use of physical force does not qualify as a violent felony under the ACCA." *United States v. Price*, 559 F. App'x 496, 498 (6th Cir. 2014); *Jones*, 689 F.3d at 626; *United States v. Cooper*, 739 F.3d 873, 879 (6th Cir. 2014) ("To its credit, the government concedes that Adams's prior conviction . . . does not categorically count as a crime of violence . . . because the statute criminalizes reckless conduct."); *McMurray*, 653 F.3d at 374-75 ("Thus, pursuant to *Leocal* and *Portela*, we conclude that the 'use of physical force' clause of the ACCA, §

17

924(e)(2)(B)(i), requires more than reckless conduct.").[13] The Court of Appeals may decide that *Voisine* changes this conclusion, but it has not yet said so.[14] Prior Sixth Circuit decisions "remain[] controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or [the Circuit] sitting en banc overrules the prior decision." *United States v. Yoon*, 398 F.3d 802, 806 (6th Cir. 2005); *Darrah v. City of Oak Park*, 255 F.3d 301, 309-10 (6th Cir. 2001). Neither circumstance is present here, so the prior Circuit decisions remain binding.[15] Again,

---

[13] *Cf., e.g.*, *United States v. Adams*, 51 F. App'x 507, 508 (6th Cir. 2002) (holding that Kentucky reckless homicide qualifies under the Guidelines based *only* on the now invalidated residual clause); *United States v. Gabbard*, 49 F. App'x 603, 604 (6th Cir. 2002) ("A crime of violence does not have to list a specific intent as an element and includes offenses involving 'reckless' conduct *with a serious risk of physical injury*." (emphasis added)).

[14] Although, other Circuits have begun to react. *See, e.g.*, *United States v. Howell*, 838 F.3d 489, 501 (5th Cir. 2016) ("We therefore conclude that the mental state of recklessness may qualify as an offense that 'has as an element the use, attempted use, or threatened use of physical force against the person of another' within the meaning of § 4B1.2(a)(1) of the Guidelines.") (citing *Voisine*); *United States v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016) ("Reckless conduct thus constitutes a 'use' of force under the ACCA because the force clauses in 18 U.S.C. § 921(a)(33)(A)(ii) and the ACCA both define qualifying predicate offenses as those involving the 'use . . . of physical force' against another."); *but see, e.g.*, *United States v. Mitchell*, 653 F. App'x 639, 644 n.5 (10th Cir. 2016) (reaffirming, two days after *Voisine*, that "an offense that may be committed with a reckless mens rea . . . does not constitute a crime of violence"); *United States v. Sabetta*, ___ F. Supp. 3d ___, No. 00-cr-135-S-PAS, 2016 WL 6157454, at *8-*9 (D.R.I. Oct. 24, 2016) ("*Voisine* did not disturb the First Circuit's decisions about the mens rea required for a violent felony under the ACCA. Crimes requiring proof of only a recklessness mens rea for the application of force do not have as an element the use, attempted use, or threatened use of violent force."); *United States v. Rodriguez-Ruiz*, Nos. CR-06-108-C, CIV-16-669-C, 2016 WL 6902482, at *4 (W.D. Okla. Nov. 23, 2016); *Bennett v. United States*, Nos. 1:16-cv-251-GZS, 1:94-cr-11-GZS, 2016 WL 3676145, at *2-*4 (D. Me. July 6, 2016); *see also United States v. Castleman*, 134 S. Ct. 1405, 1414 (2014) ("[T]he merely reckless causation of bodily injury . . . may not be a 'use' of force."); *see also id.* at 1414 n.8 (noting that "the Courts of Appeals have almost uniformly held that recklessness is not sufficient" to "constitute a 'use' of force" (citing cases)).

[15] To conclude and summarize regarding *Voisine*: it did not exist as a source of law at the time of sentencing; it interpreted *only* § 921(a)(33)(A); and it explicitly segregated from its analysis the question presented here (at least a question closer to the one presented here), *see* 136 S. Ct. at 2280 n.4. The Sixth Circuit has not extended the *Voisine* ruling to

---

18

Campbell's counsel did not raise these controlling cases or present arguments as to this issue.

> ii.    Next, the Court assesses whether it may employ the modified categorical approach.

Judge Reeves, with no protestation from Attorney Thompson, treated KRS 508.025 as categorically representing a crime of violence,[16] but he also then, alternatively, engaged in the modified categorical approach analysis that applies to a divisible statute. Again, Thompson made no objection to this step or to the Court's analysis. The question here is whether the Court may properly employ the modified categorical approach and, if so, whether Campbell's assault third conviction qualifies under that analysis. Thompson failed to advocate as to these critical topics.

The modified categorical approach generally permits a court to "look beyond the statutory elements . . . to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction."

---

reckless felony ACCA / Guideline cases. Further, the Court perceives without exploring potential *ex post facto* and due process questions applying *Voisine* retroactively to Campbell (by including recklessness (when previously excluded by the Circuit): such application would be to his detriment. *See, e.g.*, *Rogers v. Tennessee*, 121 S. Ct. 1693, 1698 (2001); *United States v. Tragas*, 727 F.3d 610, 619-20 (6th Cir. 2013).

[16] The Court also notes that KRS 508.025 has a distinct sub-section addressing acts by enumerated detainees. That sub-section includes within the ambit of assault third the act of "throw[ing] . . . feces, or urine, or other bodily fluid . . . upon a [detention facility] employee." *See* KRS 508.025(1)(b). That (1)(b) crime, which does not require and indeed distinguishes acts causing "physical injury," also likely (and irrespective of the recklessness issue) would prevent KRS 508.025 from categorically equating to a crime of violence because the statute could be violated without the use of *violent* force. *See Webb v. Commonwealth*, No. 2013-CA-339-MR, 2014 WL 5314704, at *6 (Ky. Ct. App. Oct. 17, 2014); *cf. United States v. Salean*, 583 F.3d 1059, 1061 (8th Cir. 2009). "If the statute is to satisfy the categorical approach, each avenue for violating [it] must constitute a crime of violence." *United States v. Cooper*, 739 F.3d 873, 879 (6th Cir. 2014). The existence of subsection (1)(b) would likely preclude KRS 508.025 from categorically qualifying as a crime of violence regardless of (1)(a)'s inclusion of recklessness, although Campbell does not make that argument.

*Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013). "[T]he modified approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Id.* at 2283. The threshold question is, therefore, whether KRS 508.025 "list[s] potential offense *elements* in the alternative" and is thus divisible. *Id.* (emphasis added). If the statute is divisible, the Court properly turns to the modified categorical approach. If not, the statute simply does not qualify as a career offender predicate.

Again, a recent Supreme Court decision comes into play—*Mathis v. United States*, 136 S. Ct. 2243 (2016). *Mathis* reiterated the Supreme Court's longstanding "simple point," which "became a mantra," that courts may look *only* to elements—not means or case facts—when assessing divisibility. *Id.* at 2251. The Supreme Court has "said (and said and said)" this fundamental principle possibly to the point of "downright tedium": "For more than 25 years, we have repeatedly made clear that application of ACCA involves, and involves only, comparing elements." *Id.* at 2252, 2255, 2257. *Mathis* thus, as relevant here, injects added clarity to the established *Descamps* analysis. *See id.* at 2256 (relying on *Descamps* to define district courts' analysis duty).

The Court finds, for reasons explained in this Opinion, that KRS 508.025 does not list alternative offense elements; it, accordingly, is not divisible, and the Court cannot utilize the modified categorical approach as a predicate-assessment tool. To be guilty of assault third, an actor must "[r]ecklessly, with a deadly weapon or dangerous instrument, or intentionally" cause, or attempt to cause, physical injury. KRS 508.025(1)(a). Kentucky assault third has one *mens rea* element, which may be satisfied in two

alternative ways—the actor may cause, or attempt to cause, physical injury *either* recklessly (involving a deadly weapon or dangerous instrument) *or* intentionally.[17] Either variant, if proved, leads to the same result: conviction under the statute, a class D felony. The statutory alternatives do not carry different punishments, suggesting they are not different elements. *Cf. Apprendi v. New Jersey*, 120 S. Ct. 2348, 2362-63 (2000) (requiring a jury to agree on any circumstance increasing a statutory penalty, indicating such things are distinct offense elements).

Kentucky courts have not addressed this precise issue regarding KRS 508.025(1)(a), but Chapter 508 guidance, regarding the suite of assault crimes, strongly signals this outcome. Across the Kentucky Revised Statutes, and in particular within KRS Chapter 508, alternative statutory mental states are usually variant *means* to satisfy the single *mens rea* element of the crime—not individual elements of a distinct offense. The cases on this point are many, but the foundational one is *Wells v. Commonwealth*, 561 S.W.2d 85 (Ky. 1978). In *Wells*, the Kentucky Supreme Court, in the context of interpreting KRS 508.010 (first degree assault), held as follows:

> KRS 508.010 brings together two distinct culpable mental states (intent and wantonness manifesting extreme indifference to the value of human life) and punishes them equally under specified circumstances. Either mental state will support a conviction of assault in the first degree and punishment for such crime. The legal effect of the alternative conclusions is identical. There was ample evidence to support a verdict on either theory of the case. We hold that a verdict can not be successfully attacked upon the ground that the jurors could have believed either of two theories of the case where both interpretations are supported by the evidence and the proof of either beyond a reasonable doubt constitutes the same offense.

561 S.W.2d at 88.

---

[17] The one exception, declared only after Campbell's conviction, is that it is "not possible for one to 'attempt' a reckless act." *Smith v. Commonwealth*, No. 2007-CA-2498-MR, 2009 WL 637193, at *2 (Ky. Ct. App. Mar. 13, 2009).

So too here: KRS 508.025 "brings together two distinct culpable mental states . . . and punishes them equally under specified circumstances." *Id.* As with 508.010, per 508.025, "[e]ither mental state will support a conviction of assault in the [third] degree and punishment for such crime. The legal effect of the alternative conclusions is identical." *Id.*

Under *Wells*, a Kentucky conviction is valid even if "the jurors could have believed either of two theories of the case" and where "the proof of either . . . constitutes the same offense." *Id.* That is squarely the situation KRS 508.025 presents. *See also Moneymaker v. Chapleau*, 42 F.3d 1389, No. 93-6566, 1994 WL 194179, at *2 (6th Cir. May 16, 1994) (table) (affirming denial of a habeas petition, which raised a verdict unanimity theory, where the Kentucky trial court "instructed the jury on intentional and wanton assault": "Since the existence of both culpable mental states is supported by the record, and the proof of either beyond a reasonable doubt constitutes the same offense, . . . the trial court did not err." (emphases removed)).

Building on *Wells*, Kentucky courts consistently have held, as to statutes with this structure, that one specific statutory alternative mental state need not be proven to the exclusion of another—indicating, by implication, that the alternatives are not individual elements but rather are means of commission. *See, e.g.*, *Ice v. Commonwealth*, 667 S.W.2d 671, 677 (Ky. 1984) ("The trial court instructed the jury that appellant could be convicted of murder if he caused Donna Knox's death 'intentionally' or 'wantonly . . . under circumstances manifesting an extreme indifference to human life.' Appellant complains that some jurors may believe 'intentionally, and some wantonly.' Appellant claims that in this form he is deprived of his right to a unanimous verdict as guaranteed

by Section 7 of the Kentucky Constitution and his right to due process of law as guaranteed by the United States Constitution. We disagree."); *Wallen v. Commonwealth*, 657 S.W.2d 232, 234 (Ky. 1983) ("The murder instruction covered alternative mental states, intentional murder and wanton conduct. The instruction was not error in the circumstances of this case. . . . [C]onsidering the evidence as a whole, in our view it was sufficient to support an instruction on both the alternative mental states to murder."); *see also Moran v. Commonwealth*, 399 S.W.3d 35, 37-38 (Ky. Ct. App. 2013).

The cases continue. *Johnson v. Commonwealth*, 12 S.W.3d 258, 265-66 (Ky. 1999) ("The indictment charged Appellant with murder 'by intentionally or under circumstances manifesting extreme indifference to human life wantonly caus[ing] the death of Stanford M. Johnson.' . . . The instruction in this case was . . . a combination instruction which permitted the jury to find Appellant guilty of murder under either KRS 507.020(1)(a) (intentional murder) or KRS 507.020(1)(b) (wanton murder). Since the jury returned a general verdict simply finding Appellant guilty of murder, it is impossible to know whether the jury believed Appellant was acting intentionally or wantonly when the murder was committed. . . . Appellant claims he was denied his right to a unanimous verdict. [T]his is a non-issue if the evidence would have supported either theory.); *Buchanan v. Commonwealth*, 399 S.W.3d 436, 443 (Ky. Ct. App. 2012) ("Buchanan was indicted for first-degree assault pursuant to KRS 508.010. Because KRS 508.010 includes both intentional and wanton states of mind, Buchanan was on notice that *it was within the Commonwealth's discretion to proceed under either or both theories*. We are of the opinion that, based on the evidence in this case, the jury could have believed either

theory. Thus, the jury instruction for first-degree assault was proper, and no error occurred." (emphasis added)).

Kentucky is clear that, in circumstances similar to Campbell's, jurors are **not** required to unanimously agree on the applicable *mens rea* under a statute, when variant mental states are listed in the alternative. In fact, the Kentucky Court of Appeals has explicitly approved jury instructions contemplating just such a scenario:

> The second-degree assault instruction given to the jury stated as follows:

> You will find the Defendant guilty of Second-Degree Assault under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

> A. That in this county on or about February 16, 2008 and before the finding of the Indictment herein, he inflicted an injury upon Tonya Willis by kicking her;

> AND

> B. That in doing so:

> (1) He intentionally caused a serious physical injury to Tonya Willis;

> OR

> (2) He wantonly caused a serious physical injury to Tonya Willis and that the Defendant's foot and shoe were dangerous instruments as defined under Instruction No. 2.

> Clearly, under the instruction, the jury had to believe that Appellant either (1) intentionally caused a serious physical injury or (2) wantonly caused a serious physical injury with a dangerous instrument. The Commonwealth bore the burden of proving each element of the offense. . . . **KRS 508.020 brings together two distinct culpable mental states and punishes them equally under specified circumstances. 'Either mental state will support a conviction of assault in the [second] degree. . . . The legal effect of the alternative conclusions is identical.'** *Wells v. Commonwealth*, 561 S.W.2d 85, 88 (Ky. 1978).

> Appellant was on notice that KRS 508.020 includes both intentional and wanton states of mind, and it was within the Commonwealth's discretion

to proceed under either or both theories. . . . **We are of the opinion that the jury could have believed either theory where both interpretations were supported by the evidence, and the proof of either beyond a reasonable doubt constituted the same offense.** . . . Thus, the jury instruction for second-degree assault was proper, and no error occurred.

*Johnson v. Commonwealth*, No. 2008-CA-2008-MR, 2009 WL 5125013, at *2 (Ky. Ct. App. Dec. 30, 2009) (emphases added).[18]

These cases illuminate, structurally and substantively, the alternative mental states listed in KRS 508.025(1)(a) and strongly indicate that the variant *mens rea* options are *not* individual or separate elements of a distinct offense—instead, they represent different *means* by which an individual can satisfy the offense's single *mens rea* element. *Cf. Benjamin v. Commonwealth*, 266 S.W.3d 775, 785 (Ky. 2008) (referencing "intentional **and** wanton mental states as being **equivalent means** to satisfy the *mens rea* element of KRS 507.020" (emphases added)); *Covington v. Commonwealth*, 849 S.W.2d 560, 562 (Ky. Ct. App. 1992) (imposing an "intentionally **or** wantonly" *mens rea* requirement as to

---

[18] *See also United States v. Gardner*, 823 F.3d 793, 802-03 (4th Cir. 2016) ("Therefore, when determining the divisibility of a crime, we may consider how courts generally instruct juries with respect to that offense." (internal quotation marks removed)). Quoting at length:

> Under North Carolina's pattern jury instructions, the final element of common law robbery requires 'that the taking was by violence or by putting the person in fear.' N.C. Pattern Instructions—Crim. 217.10. Thus, the jury need not agree unanimously that the felonious taking was committed by the use of violence or by instilling fear, only that one of the two means was employed. Accordingly, North Carolina common law robbery may be committed by the alternate means of violence or fear that do not constitute different elements of distinct crimes. The crime, therefore, is an indivisible offense, in which the modified categorical approach 'has no role to play.' *Descamps*, 133 S. Ct. at 2285.

*Gardner*, 823 F.3d at 802-03; *cf. United States v. Barcenas-Yanez*, 826 F.3d 752, 757-58 (4th Cir. 2016) (holding that, because "jury unanimity as to mens rea is not required for an aggravated assault conviction under" a Texas assault statute, a conviction under that statute is not a crime of violence under the reentry Guideline).

KRS 508.025(1)(b) as "**the** culpable mental state required for assault in the third degree" (emphases added)); *Magyar v. Commonwealth*, No. 2011-CA-1892-MR, 2013 WL 2257694, at *1-*2 (Ky. Ct. App. May 24, 2013) ("The Commonwealth sought a conviction under **the theory** that Magyar acted recklessly with a dangerous instrument when he slammed the door shut on Officer Gipson's hand." (emphasis added)). The Court can find no indication in Kentucky law that the alternatives in KRS 508.025(1)(a) create the divisibility marker, "several different crimes." *Descamps*, 133 S. Ct. at 2285.[19]

KRS 508.025 is structured the same as the other statutes in the assault chapter. Most of the other iterations define, under a single crime, conduct involving either a higher *mens rea* or a lower *mens rea* AND an aggravating factor (such as fact or degree of injury caused or the use of a weapon). Although the cases discussed focus on assault first and assault second, assault third offers the same structure (alternative culpable mental states within one crime) as those statutes discussed and interpreted by *Wells* (assault first) and *Johnson* (assault second).

For assault third to be divisible, the alternative mental states must be elements of distinct crimes rather than means of meeting a single element. *Mathis* and *Descamps* discuss the tools or signs by which to divine this critical line, which centers on "what a jury 'necessarily found' to convict a defendant (or what he necessarily admitted)." *Mathis*, 136 S. Ct. at 2254; *see also Barcenas-Yanez*, 826 F.3d at 757-58 ("Only when

---

[19] The lone *possible* inconsistent presentation (at least that the Court found) is *Smith*: "The language of KRS 508.025 is clear and unambiguous. It provides for the following criminal acts: (1) recklessly injuring an officer with a deadly weapon; (2) intentionally injuring an officer; and (3) attempting to injure an officer." 2009 WL 637193, at *2. The Court does not perceive this isolated language as altering any conclusion here. Indeed, as *Smith* recognized, KRS 508.025 does indeed criminalize each of those "acts"—but as discrete factual circumstances equaling the commission of assault third, not as separate crimes. *Id.* Thus, *Smith* helpfully enumerated some factual methods by which an actor may commit assault third, but it did not define differing elements of distinct crimes.

[the] law requires that in order to convict the defendant the jury must unanimously agree that he committed a particular substantive offense contained within the disjunctively worded statute are we able to conclude that the statute contains alternative elements and not alternative means.") (citation omitted); *United States v. Hinkle*, 832 F.3d 569, 575 (5th Cir. 2016) ("Elements must be agreed upon by a jury. When a jury is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense not an element of the offense."). Kentucky consistently treats the alternative mental states within the assault chapter as equivalent means, "alternative conclusions" within the "same crime"—"jurors could have believed either of two theories of the case . . . and the proof of either beyond a reasonable doubt constituted the same offense." *Wells*, 561 S.W.2d at 89. As such, the KRS 508.025(1)(a) lone, indivisible crime, which includes the recklessness *mens rea*, sweeps beyond the sphere of a crime of violence and precludes KRS 508.025 from qualifying, divisibly, as a career offender predicate. A jury could be instructed as to both mental states under one instruction, and Kentucky would not require a unanimous verdict as to the particular mental state, rendering the particular state a means rather than an element of the assault third offense.

If any doubt persists, a glimpse at approved documents "would reflect the crime's elements." *Descamps*, 133 S. Ct. at 2285 n.2. "When a state law is drafted in the alternative, the court [can] merely resort[] to the approved documents" for the sole, limited purpose of assessing whether alternatives are means or elements. *Id.* The Supreme Court, at the time of Campbell's sentencing, had explicitly approved such a limited peek at the documents. Here, the relevant Indictment charged Campbell as follows:

> On or about the 15th day of September, 2005, in Woodford County, Kentucky, the above named Defendant committed the offense of Assault Third Degree when he **unlawfully** caused or attempted to cause physical injury to Officer Jeff Farmer of the Versailles Police Department.

DE #93, at 29 (emphasis added). This formulation, which avoids *mens rea* particularity, indicates that the reckless or intentional alternatives are **not** independent elements of the assault third offense. The Kentucky grand jury explicitly did **not** charge one specific mental state, to the exclusion of the other, instead merely alleging Campbell's "unlawful" *mens rea*. If KRS 508.025(1)(a) creates multiple crimes, the grand jury would have had to charge a specific one, and the Commonwealth would have had to prove the precise one charged. *Descamps*, 133 S. Ct. at 2290 ("A prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives."). Additionally, neither the state Judgment nor the Commonwealth's offer of a plea of guilty enumerates a specific mental state. DE #93, at 30-31, 34-37.[20]

Per cases like *Ice*, *Johnson* (1999), and *Johnson* (2009), as well as the foundational similarities to *Wells*,[21] a Kentucky jury evaluating KRS 508.025 need not

---

[20] Although the Court only peeks at the Indictment for the limited purpose of assessing whether the alternative mental states are individual elements of the offense, the Court also notes that the Indictment, in Campbell's particular scenario, does not necessarily exclude the reckless variant due to operation of the "deadly weapon or dangerous instrument" modifier. A "dangerous instrument" in Kentucky can in some circumstances include "parts of the human body." KRS 500.080(3). The Indictment merely charges an "unlawful" *mens rea* (which would, in a given case, include recklessness). The Indictment—far from a model of clarity—really only requires violation of the statute, and any of the listed means could have been in play. The Court merely notes these matters: the sole purpose of the Court's glimpse at Campbell's Indictment is to aid (or not) the inquiry of whether assault third's alternative mental states are crime elements or means. The Indictment strongly suggests the latter, foreclosing divisibility.

[21]    The Court notes another telling parallel: *Mathis* relied on *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981), to determine that Iowa burglary enumerated "alternative ways of satisfying a single locational element." *See Mathis*, 136 S. Ct. at 2250. *Duncan*, in turn, principally cites *People v. Sullivan*, 65 N.E. 989, 989 (N.Y. 1903), for its conclusion as to unanimity.

unanimously agree on the applicable mental state when presented with record-supported alternatives that support conviction.[22] Like the Woodford Indictment as to Campbell, this establishes that Kentucky does not treat alternative mental states, in these circumstances, as elements of the offense; a jury must unanimously find true offense elements beyond a reasonable doubt but need not unanimously agree on the means used to commit the crime. *See, e.g.*, *Richardson v. United States*, 119 S. Ct. 1707, 1710 (1999).[23]

This is consistent with the United States Supreme Court's guidance on a similar question. *Schad v. Arizona*, 111 S. Ct. 2491, 2497 (1991) (plurality opinion) ("We see no reason, however, why the rule that the jury need not agree as to mere means of satisfying

---

*Wells*, for its part, is likewise a wholesale adoption of the *Sullivan* principle in Kentucky. *See* 561 S.W.2d at 87-88 ("We are convinced that the logic of People v. Sullivan, supra, is sound and applicable here."). Thus, in finding that statutory alternatives were means, not elements, *Mathis* relied on a state case (*Duncan*) that, in turn, relied on *Sullivan*. Likewise, here, the Court, in making the same finding, relies on a state case (*Wells*) that, in turn, relied on *Sullivan*. In the Court's view, this parallel solidifies the conclusion on divisibility and Kentucky's view of the unanimity requirement in KRS 508.010.

[22] Further, the Court finds it significant that *Mathis* (indicating the Supreme Court's recent analysis of the general topic) contemplates the possibility that alternative mental states can be "interchangeable means of satisfying a single *mens rea* element." 136 S. Ct. at 2253 n.3.

Similarly, *Voisine* (even more recently than *Mathis*) envisions the possibility that a statute, like Maine's assault statute, that criminalizes "'intentionally, knowingly or recklessly' injur[ing] another" can "define[] a single crime (which happens to list alternative mental states)[.]" 136 S. Ct. at 2280; *see also id.* at 2284 (Thomas, J., dissenting) ("Accordingly, Maine's statute appears to treat 'intentionally, knowingly, or recklessly' causing bodily injury or an offensive touching as a single, indivisible offense that is satisfied by recklessness." (citing *Mathis*)). Thus, all 8 current Justices appear to agree (though this was not a square holding in *Voisine*) that a crime listing alternative mental states, as does KRS 508.025, is (or at least may be) indivisible.

[23] The Court acknowledges consideration of some counter-evidence on this conclusion. *See, e.g.*, *Smith*, 2009 WL 637193, at *1 (citing the trial court's separate jury instructions for the intentional and reckless variants, possibly indicating the jury had to unanimously agree on the applicable *mens rea*); William S. Cooper and Donald P. Cetrulo, *Kentucky Instructions to Juries, Criminal* §§ 3.47-3.49A (2016) (similarly separating the possible mental states); *but see Gribbins v. Commonwealth*, 483 S.W.3d 370, 374 (Ky. 2016) ("Cooper's Instructions are not binding on this Court[.]").

the *actus reus* element of an offense should not apply equally to alternative means of satisfying the element of *mens rea*."). The *Schad* plurality specifically rejected the dissent's assumption that "any statutory alternatives are *ipso facto* independent elements defining independent crimes under state law." *Id.* at 2499-2500 (approving the state court's interpretation of the alternative mental state options as "not independent elements of the crime, but rather . . . mere means of satisfying a single *mens rea* element").

Federal appeals courts, however, have recently come to conflicting conclusions on this general question, though in specific legal contexts. *Compare United States v. Garcia-Longoria*, 819 F.3d 1063, 1066-67 (8th Cir. 2016) ("[W]e conclude that the mens rea alternatives in Neb. Rev. Stat. § 28–931(1) are 'alternative element[s] in a divisible statute' that permit use of the modified categorical approach to determine whether Garcia-Longoria's prior conviction was a crime of violence."), *with Ramirez v. Lynch*, 810 F.3d 1127, 1138 (9th Cir. 2016) ("[T]hese alternative mens rea requirements are not 'elements' for purposes of . . . *Descamps*. Rather, they are alternative means for accomplishing a single indivisible crime.").[24]

---

[24] *Garcia-Longoria* is particularly relevant, but also critically different. The Nebraska statute at issue there compares favorably to the Kentucky statute at issue here. The Eighth Circuit found the defendant's similar alternative-*mens-rea* argument "creative" but "without merit." 819 F.3d at 1066. The chief support for this conclusion, however, was that the Supreme Court purportedly, post-*Descamps*, in *Castleman*, "obvious[ly] appli[ed]" the modified categorical approach to the *mens rea* alternatives in a single subsection of the statute." *Garcia-Longoria*, 819 F.3d at 1066. The Court respectfully disagrees with this interpretation of *Castleman*. Instead of independently assessing whether the modified categorical approach applied, the Supreme Court simply acceded to the parties' agreement: "the parties d[id] not contest that [the statute at issue] [wa]s a divisible statute." *Castleman*, 134 S. Ct. at 1414. Additionally, and of great significance, the Eighth Circuit relied on the Nebraska courts' specific determination "that committing third degree assault by intentionally causing bodily injury, and by recklessly causing bodily injury, are different crimes." *Garcia-Longoria*, 819 F.3d at 1066-67. That is vitally different from Kentucky courts' likely *Wells*-based treatment of assault third, per

With all this said, the Court concludes, per the above discussion, that KRS 508.025 does not list potential offense elements in the alternative. Again, the Court properly applies the modified categorical approach *only if* the statute lists alternative offense elements. Here, Kentucky's statute lists only alternative *means* to satisfy one element of the offense, which bars modified categorical approach application. As *Mathis* and *Descamps* dictate, if a statute is indivisible and not one categorically addressing a crime of violence, the statute does not involve a defined "crime of violence" or "violent felony" for ACCA or career offender purposes. Accordingly, because KRS 508.025 is not categorically a crime of violence, and because the modified categorical approach is inapplicable as a career offender predicate assessment tool, KRS 508.025 does not qualify as a career offender predicate offense.

### iii.     Finally, the Court applies the standards and determinations to Mr. Thompson's representation of Campbell.

Resolution of the substantive qualification questions leads the Court to consideration of Mr. Thompson's performance, prejudice to Campbell, and the overall ineffective assistance of counsel inquiry. As the Court previously stated, to the extent Campbell stakes his arguments on *Johnson*, those arguments fail because the Court did not sentence him under the residual clause. While many of Campbell's arguments thus miss the mark, his complaints about counsel and sentencing do have merit, per the above discussion. Mr. Thompson did not effectively assist Campbell in attempting to avoid the career offender enhancement. Because there is a reasonable probability that the sentence would have been different with constitutionally-assured advocacy, the Court recommends

the above discussion. For these reasons, *Garcia-Longoria* is unpersuasive and distinguishable from this case.

that Judge Reeves grant (to this extent) the § 2255 motion, appoint Campbell counsel, and resentence him.

To reiterate: in the context of alleging ineffective assistance at sentencing, "any amount of actual jail time has Sixth Amendment significance." *Glover*, 121 S. Ct. at 700. Accordingly, "[a]n error by counsel at sentencing that amounts to any extra jail time is prejudicial under the Sixth Amendment." *McPhearson*, 675 F.3d at 563. "[T]he familiar framework established in" *Strickland* generally governs sentencing IAC claims—meaning that, here, Campbell must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Howard*, 743 F.3d at 463-64. "A reasonable probability is less than a preponderance of the evidence, as a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.*; *see also, e.g.*, *Jones*, 308 F. App'x at 932 (requiring a showing of a reasonable probability "that the district court would have sentenced [Movant] differently had counsel sought a departure" or that Movant "would have received a different sentence"); *DeGroat*, 102 F. App'x at 959-60 (same).

Clearly, "[c]ounsel's failure to object to an error at sentencing or failure to raise a viable argument that would reduce his client's sentence may constitute deficient performance." *McPhearson*, 675 F.3d at 549. While counsel's decision not to raise an argument receives "substantial deference," "as in other circumstances, an omission by counsel at sentencing [is] deficient [if] his failure to raise the argument was objectively unreasonable." *Id.*

The Court has carefully examined Thompson's representation of Campbell under the applicable *Strickland* rubric, considering the entire record. Application of the career offender enhancement resulted in Campbell's Guideline imprisonment range moving from 30-37 months (as a Criminal History Category IV and offense level of 15) to 188-235 months (as a Criminal History Category VI and an offense level of 31). *See* DE #93, at 7, 10. Any unwarranted custodial time matters under *Strickland* and *Glover*, and here, the gravity of the enhancement decries with particular emphasis what Thompson did and did not do.

    *First*—Thompson deficiently performed.

The core of Mr. Thompson's ineffectiveness was his failure to advocate disputable points within the basic legal framework surrounding evaluation, under the Guidelines' elements clause (§ 4B1.2(a)(1)), of a prior conviction as a career offender predicate. Thus, Thompson did argue against the enhancement, but his sole gambit addressed whether Campbell's 2007 assault third conviction would qualify under § 4B1.2(a)(2)'s residual clause. *See, e.g.*, DE ##79 (Objections to PIR); 93, at 20-21 (same). That was the focus of his objection to the Probation Office, *see* DE #93, at 22-24, and to the Court, *see* DE #114, at 4-5 ("Our position really just turns on this, when you look at the list of items under 4B1.2 that constitute career offender under a crime of violence, burglary of a dwelling, arson, extortion, it involves use of explosives, otherwise involves conduct that presents a serious potential risk of physical injury to another, I think the prior examples are -- provide some sort of guidance and benchmark for what we are talking about when we are talking about a crime of violence."). Thompson's argument really was one of fairness, treating as "beyond the pale" that the interposition of

an identified victim (*i.e.*, a police officer, which effected a level change in the crime from assault fourth to assault third in Kentucky) would be the career offender driver. *See* DE #114, at 5 (Thompson arguing and summarizing: "This, were this person not a police officer, would have been a misdemeanor assault in the State of Kentucky, but for his classification as a police officer, ends up making it an assault third. It's our position that it's beyond the pale to have this kind of enhancement for really something this minor, which is creating this draconian result.").

At sentencing, Judge Reeves did not impose sentence by treating the assault third conviction as a residual clause predicate. Rather, he explicitly treated the conviction as a predicate via the elements clause:

> The next question becomes whether [Campbell's assault third conviction] meets either the definitions . . . (a)(1) or (a)(2). . . .
>
> The United States argues that it meets (a)(1) under the categorical approach -- categorical approach because it has as an element the attempted use or use of threat of physical force against the person of another.
>
> Under the statute itself, KRS 508.020, a person's guilty of assault in the third degree when the actor recklessly -- recklessly with the -- with a dangerous weapon or dangerous instrument.
>
> So a person can act in one of two ways. He or she can act recklessly with a dangerous weapon or dangerous instrument or can intentionally cause or attempt to cause physical injury.
>
> In this case the defendant doesn't assert that he was using a dangerous weapon, so the question would become whether the second portion of that statute would -- would apply or whether it's been alleged as such.
>
> Recklessly requires intentional conduct under -- under Kentucky law.
>
> The court finds that under either prong it would constitute -- under the categorical approach, it would fit within the definition of a crime of violence.

It does have as an element the use or attempted use or threatened use of physical force.

Again, in this particular situation, the court does not have to look at the underlying documents, the qualifying documents under the modified categorical approach; but even if it did, this would still qualify when the court looks at the relevant documents.

So under either approach, this would be a qualifying felony offense.

I would also call the parties' attention to the relevant definition of Section 500.080 which does include under subsection 13 physical injury means substantial physical pain or any impairment of physical condition.

The way that the statute defines that term, again, it would constitute a crime of violence, but then, again, when we look at the specific documents -- and I have asked the probation office to provide me with those same documents -- when we look at the first document, it would be the criminal complaint, the court otherwise could not look at the criminal complaint alone under the modified categorical approach to determine whether this would fit the definition. . . .

Again, the court finds either under the categorical approach or under the modified categorical approach the assault third under Kentucky law under the facts presented would be a qualifying offense.

DE #114, at 7-10.

Remarkably, Thompson had not at all addressed the elements clause route by way of objection prior to the sentencing (even though the PIR included that alternative). *See* DE #93, at ¶ 24 (using the overall phrase "crime of violence"); *id.* at 24 (USPO arguing that counting a Kentucky assault third conviction "is consistent with USSG § 4B1.2(a)(1)'s requirement that the offense include the 'use' or 'attempted use' of physical force against another person" and "meets the 'black-letter' requirements of USSG § 4B1.2(a)(1)"). Further, after Judge Reeves laid out his analysis and findings, Thompson eschewed the chance to make any final objection. *See* DE #114, at 42

(Thompson: "Your Honor, except for the objection that has already previously been filed and overruled, there are no further objections.").

Counsel acting in fulfillment of the constitutional standard would have done much more, on this record. Thompson ignored or failed to perceive issues of significant merit related to the 2007 assault third conviction and its eligibility as a career offender predicate. A reasonable (and constitutionally adequate) advocate would have pursued those meritorious issues.

Mr. Thompson's performance was objectively unreasonable at several steps of consequence:

1.      Overall, Thompson fundamentally failed to act as an advocate under the basic legal framework surrounding evaluation, per the elements clause, of a career offender predicate. Never once, in objections, did he mention the categorical or modified categorical approaches (much less analyze their application to Campbell). Thompson's objections to the PIR, and his comments at sentencing, reflect misapprehension of the arguments and analysis points germane to properly evaluating a prior conviction's career offender predicate status in this context.

2.      Thompson improperly failed to argue that KRS 508.025, a crime that includes recklessness as a *mens rea*, does not categorically qualify as a crime of violence.

        a.      Binding Sixth Circuit precedent at the time of sentencing foreclosed a crime satisfied by reckless conduct from generically or categorically counting as a career offender predicate. *See, e.g.*, *Price*, 559 F. App'x at 498; *Jones*, 689 F.3d at 626; *Cooper*, 739 F.3d at 879; *McMurray*, 653 F.3d at 374-75. Thompson failed to perceive this, cite the applicable cases, or bring the argument to the Court's attention.

b.      Thompson also failed to perceive or present the KRS 508.025(1)(b) basis to argue that the statute is not categorically a crime of violence. Because, under (1)(b), an actor could violate KRS 508.025 without the use of violent force, *see Webb*, 2014 WL 5314704, at *6, this independently would preclude KRS 508.025 from categorically counting as a crime of violence. Again, Thompson failed to perceive this meritorious argument basis, cite any applicable case, or otherwise bring the issue to the Court's attention.

3.      Thompson improperly failed to contest application of the modified categorical approach (*i.e.*, by arguing that KRS 508.025 is not divisible).

a.      Foundationally, Thompson never identified or provided the applicable test to determine if the modified categorical approach applies to assess predicate status. The analysis simply did not enter Mr. Thompson's conceptualization of the argument. This represents a fundamental failure by the attorney to comprehend and advocate under the law central to the career offender considerations at sentencing.[25]

b.      Specifically, Thompson never analyzed whether the variant mental states in KRS 508.025(1)(a) are alternative elements or means, the determinative factor on divisibility. The Supreme Court had made this analysis clear at the time of Campbell's sentencing (*e.g.*, in *Descamps*). Divisibility is the critical question on the application of the modified categorical approach, and Thompson wholly failed to litigate the issue, raise the meritorious arguments, or otherwise serve as an effective advocate for Campbell on

---

[25] Another indication of this is Thompson's bizarre decision to use facts from the criminal complaint in his own argument. *See* DE #114, at 4-5 (Thompson, citing "the police report": "Mr. Campbell elbowed a police officer in the jaw."). Thompson's citation to and reliance on this paperwork shows a quick readiness to move from elemental to factual scrutiny that is inconsistent with *Descamps*.

this topic. By utterly failing to raise this issue, in any fashion, with the Probation Office and the Court, Thompson did not act as the counsel the Constitution guarantees.

4.      Finally, Thompson improperly failed to object after Judge Reeves went through the categorical and modified categorical analysis. Thus, even after the District Court explained its reasoning on the 2007 assault third conviction's predicate status and did not, in any way, rely on the residual clause, Thompson stood pat and did not object beyond the prior residual clause objection. This compounds Thompsons' pre-sentencing failure to identify these issues; after Judge Reeves set out his analysis (affirmatively applying the categorical and modified categorical approaches), Thompson still failed to perceive any issue worthy of objection.

*Second*—Campbell suffered prejudice.

Based on these considerations, the Court plainly finds a reasonable probability (a standard below a preponderance) that, if Thompson had constitutionally performed as counsel, the result of sentencing would have been different. The binding Circuit precedent concerning the categorical approach, and the clarity of Kentucky law and Supreme Court precedent concerning the analysis under the modified categorical approach, strongly suggest that appropriate arguments by Thompson would have forestalled application of the career offender enhancement to Campbell. Any unwarranted amount of jail time is prejudicial under the Sixth Amendment, and Campbell here faced Guideline ranges with **12+ year** discrepancies. Indeed, Campbell received 190 months of imprisonment after the Court deemed him a career offender; his Guideline range, without career offender status, would have been 30-37 months.

Because the Guidelines play a "central role in sentencing" and can be "in a real sense the basis for the sentence," *see Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016) (emphasis removed), there is a reasonable probability that, given the wide divergence in the potentially applicable ranges to Campbell, Movant would have received a different sentence had the Court not applied the career offender enhancement to him. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 104 S. Ct. at 2068. Campbell has made that showing on this record. *Cf. United States v. Baker*, 559 F.3d 443, 454 (6th Cir. 2009) ("It is apparent from the record that there was a reasonable probability defendant would have received a more favorable sentence had the district court properly calculated the Guidelines range."); *United States v. Wright*, 426 F. App'x 412, 415 (6th Cir. 2011) (noting that "the application of the career offender enhancement dramatically increased the advisory Guidelines range applicable" and led "to a substantially longer sentence than would otherwise be applicable"); *Brown v. Caraway*, 719 F.3d 583, 596 (7th Cir. 2013) (remanding "with instructions to reduce Brown's sentence to reflect our finding that he is not a career offender within the meaning of § 4B1.1"); *Spencer v. Booker*, 254 F. App'x 520, 525-26 (6th Cir. 2007); *see also, e.g.*, *Clark v. United States*, Nos. 4:02-CR-17, 4:10-CV-39, 2014 WL 357268, at *1 (E.D. Tenn. Jan. 31, 2014) (granting "relief under § 2255 because [Clark] was prejudiced by the ineffectiveness of his appellate counsel in failing to challenge Clark's U.S.S.G. § 4B1.1 enhancement in light of *Begay*, *Baker*, and *Descamps*"); *United States v. Ervin*, ___ F. Supp. 3d ___, Nos. CR 13-23-BLG-SPW, CV 16-56-BLG-SPW, 2016 WL 4073052, at *4-*5 (D. Mont. July 28, 2016) (finding prejudice when counsel deficiently failed to challenge the career offender enhancement).

Further, Thompson's deficient performance caused this prejudice. Thompson had a duty to prepare and pursue arguments, staked on applicable precedent, that if successful would have eliminated the enhancement. The precedential strength tells the Court better advocacy would (to a reasonably probability) have benefitted Campbell and yielded a lower sentence. Thompson thus failed his fundamental duty in our adversarial system: serving as a competent advocate for Campbell's interests, including effectively arguing against application of the career offender enhancement at sentencing. Had Thompson provided constitutional representation to Campbell, there is, at a minimum, a reasonable probability that he could have swayed Judge Reeves on the critical sentencing issues.[26] Thus, if Thompson had presented meritorious legal arguments, there it at least a reasonable probability that Judge Reeves would have reached a difference conclusion on the career offender qualification question, and, thus, sentenced Campbell differently.

For these reasons, the Court finds the two prongs of *Strickland* satisfied and concludes that Mr. Thompson provided ineffective assistance of counsel to Campbell. Accordingly, to this extent, the District Court should grant § 2255 relief and resentence Campbell.

Thompson could have cited binding Sixth Circuit authority that forecloses generic or categorical crime of violence status to a crime involving only recklessness as a *mens rea*. This may have prevented application of career offender status via the categorical analysis as to KRS 508.025(1)(a). He then could have advocated against treating 508.025(1)(a) as a divisible statute. The argument is hardly esoteric—rather, *Descamps*

---

[26] *Cf. Kaley v. United States*, 134 S. Ct. 1090, 1102 (2014) (recognizing that lawyer performance may affect the sentence or case outcome: "Different lawyers do all kinds of things differently, . . . possibly affecting whether [a defendant] gets convicted or what sentence she receives.").

and its predecessors (further confirmed by *Mathis*) dictate this logical analysis when confronted with a possible predicate statute that may be divisible. Had Thompson pursued the analysis, armed with clear Kentucky authority supporting indivisibility, there is a reasonable probability that he would have convinced Judge Reeves and, again, avoided the career offender designation.[27]

### 3. *Evidentiary Hearing and Appointment of Counsel*

Campbell requests an evidentiary hearing. DE #131-1, at 11. The Court must hold an evidentiary hearing unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, no hearing is necessary "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks removed). Campbell's claims do not warrant a hearing; the § 2255 motion filings and record of the case delineate exactly the merits of each claim. There are no contested factual issues that justify a hearing; Campbell's motion solely targets career offender qualification and connected IAC issues. The record, which needs no further development, and the law conclusively demarcate the particulars of Campbell's claims.

Further, based on the substantive recommendation, the Court recommends granting Campbell's request for appointment of counsel. DE #131-1, at 11. The appointment of counsel in § 2255 proceedings is firmly a matter in the Court's discretion.

---

[27] As to the divisibility threshold inquiry, Justice Kagan called a case with a definitive state court answer "easy." *Mathis*, 136 S. Ct. at 2256. *Wells*, while not a § 508.025 case, surely lights the path under Kentucky law. Counsel did not present an argument on this key issue.

"In all proceedings brought under [§ 2255], and any subsequent proceedings on review, the court may appoint counsel." 28 U.S.C. § 2255(g). Further, when "the court determines that the interests of justice so require, representation may be provided for any financially eligible person who is seeking relief under section . . . 2255." 18 U.S.C. § 3006A(a)(2)(B). In light of the Court's recommendation to partially grant § 2255 relief and schedule resentencing, the Court recommends that Judge Reeves find that the interests of justice require Campbell to be appointed new counsel; Campbell, of course, would have the right to counsel at any resentencing. Accordingly, the Court recommends that Judge Reeves appoint Campbell counsel as part of the subsequent proceedings in this case.

## IV.     CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissal on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason

would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604.

As to the unsuccessful claims, Movant has not made a "substantial showing" as to any claimed denial of rights. Campbell's unsuccessful claims, given the waiver and the particular IAAC context, present no issue of reasonable debate per the applicable standards and the above analysis. Accordingly, the Court recommends that the District Court deny a Certificate of Appealability as to all unsuccessful claims.

## V.    RECOMMENDATION

For these reasons, the Court **RECOMMENDS** that the District Judge **GRANT** DE #131 to the extent Mr. Thompson ineffectively assisted Campbell regarding sentencing, otherwise **DENY** DE #131, appoint Campbell counsel, schedule resentencing, and issue no Certificate of Appealability on the unsuccessful claims.

\*   \*   \*   \*   \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466, 475 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

43

This the 20th day of December, 2016.

Signed By:

*Robert E. Wier*   *REW*

**United States Magistrate Judge**